# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

BOSTON MARKET CORPORATION, ET AL.

*Plaintiffs and Appellants*,

v.

MOUNTAINAIRE FARMS, INCORPORATED, ET AL.

*Defendants and Appellees.*

---

On Appeal From The United States District Court For The
Northern District of Illinois
Case No. 1:16-cv-08637
Hon. Thomas M. Durkin

## RESPONSE BRIEF OF DIRECT PURCHASER PLAINTIFFS-APPELLEES

---

CLIFFORD H. PEARSON
DANIEL L. WARSHAW
BOBBY POUYA
MICHAEL H. PEARSON
PEARSON WARSHAW, LLP
15165 Ventura Boulevard,
Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

W. JOSEPH BRUCKNER
BRIAN D. CLARK
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

*Counsel for Direct Purchaser Plaintiffs - Appellees*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1030

Short Caption: Boston Market Corporation, et al. v. Mountainaire Farms, Incorporated, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    See Attachment for list of Direct Purchaser Plaintiffs


(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Lockridge Grindal Nauen P.L.L.P. and Pearson Warshaw, LLP as Co-Lead Class Counsel; and

    Hart, McLaughlin & Eldridge, LLC as Liaison Counsel

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        The parent company of Ferraro Foods, Inc. is Ferraro Fine Foods Corp.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: /s/ Bobby Pouya    Date: 03/25/2024

Attorney's Printed Name: BOBBY POUYA

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✓]  No [ ]

Address: Pearson Warshaw, LLP

    15165 Ventura Boulevard, Suite 400, Sherman Oaks, CA 91403

Phone Number: (818) 788-8300    Fax Number: (818) 788-8104

E-Mail Address: bpouya@pwfirm.com

# ATTACHMENT TO

# <u>APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT</u>

Appellate Court No. 24-1030


## <u>List of Direct Purchaser Plaintiffs:</u>

Maplevale Farms, Inc., a New York corporation;

John Gross and Company, Inc., a Pennsylvania corporation;

Ferraro Foods, Inc., a New Jersey corporation;

Ferraro Foods of North Carolina, LLC, a North Carolina Limited Liability;

Joe Christiana Food Distributors, Inc., a Louisiana corporation; and

Cedar Farms Co., Inc., a Pennsylvania corporation.

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1030

Short Caption: Boston Market Corporation, et al. v. Mountainaire Farms, Incorporated, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

See Attachment for list of Direct Purchaser Plaintiffs

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Lockridge Grindal Nauen P.L.L.P. and Pearson Warshaw, LLP as Co-Lead Class Counsel; and

Hart, McLaughlin & Eldridge, LLC as Liaison Counsel

(3)    If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

         The parent company of Ferraro Foods, Inc. is Ferraro Fine Foods Corp.

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ W. Joseph Bruckner      Date: 03/25/2024

Attorney's Printed Name: W. JOSEPH BRUCKNER

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: LOCKRIDGE GRINDAL NAUEN P.L.L.P.

100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401

Phone Number: (612) 339-6900      Fax Number: (612) 339-0981

E-Mail Address: wjbruckner@locklaw.com

rev. 12/19 AK

# ATTACHMENT TO

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No. 24-1030

## List of Direct Purchaser Plaintiffs:

Maplevale Farms, Inc., a New York corporation;

John Gross and Company, Inc., a Pennsylvania corporation;

Ferraro Foods, Inc., a New Jersey corporation;

Ferraro Foods of North Carolina, LLC, a North Carolina Limited Liability;

Joe Christiana Food Distributors, Inc., a Louisiana corporation; and

Cedar Farms Co., Inc., a Pennsylvania corporation.

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................1

II. JURISDICTIONAL STATEMENT.......................................................3

III. STATEMENT OF ISSUES PRESENTED FOR REVIEW .................4

IV. STATEMENT OF THE CASE ..............................................................5

    A.    The DPP Class Case was Litigated Over Seven Years with an
            Extremely Well-Developed Record ........................................5

    B.    The DPP Class Secured Over $284 Million in Settlements in a
            Case Fraught with Risks........................................................7

    C.    Appellants Filed a Related Opt-Out Case and Were Active
            Participants in the Action .....................................................9

            1.    Appellants Filed a Related Opt Out Case Containing
                  Claims, Products, and Conduct that Overlap with the
                  Class Case ...................................................................9

            2.    Appellants and the District Court Recognized the
                  Relationship Between Bid-Rigging and the Other Broiler
                  Antitrust Claims ......................................................11

            3.    Appellants Advocated Against Bifurcating of Their Bid-
                  Rigging Claims Resulting in a Two-Track Selection
                  Process......................................................................13

    D.    The District Court Provided the Class Members with Multiple
            Rounds of Notice and Opportunities to Opt Out..................15

            1.    Appellants and Other Class Members Opted-Out of Pre-
                  Certification Settlements and Filed Individual Related
                  Lawsuits ...................................................................15

            2.    All Direct Action Plaintiffs, Except Appellants,
                  Recognized the Need to Opt Out of the Litigation Class
                  to Preserve Their Individual Claims .........................15

    E.    The District Court Rejected Appellants' Argument that Filing
            Their Related Individual Lawsuit Obviated the Need to Opt Out
            of the Class ..........................................................................17

    F.    Appellants Filed a Meritless Objection to the Simmons
            Settlement Focused on Their Individual Bid-Rigging Claims............17

V. SUMMARY OF THE ARGUMENT ...................................................... 18

VI. ARGUMENT .................................................................................... 21

    A.    Standard of Review .................................................................. 21

    B.    The District Court Acted Within Its Substantial Discretion in Ruling the Simmons Settlement was Fair, Reasonable, and Adequate .................................................................................. 22

        1.    The District Court Relied on Its Intimate Knowledge of the Case and Followed this Circuit's Guidance in Granting Final Approval to the Simmons Settlement .............. 23

        2.    Appellants' Objection Based on the Value of Their Individual Bid-Rigging Claims does Not Establish that the District Court Abused its Discretion in Approving the Simmons Settlement ................................................................ 26

            (a)    The Court-Approved Opt-Out Procedures Allowed Appellants to Preserve the Right to Obtain "Separate Consideration" for Their Individual Bid-Rigging Claims ......................................................... 27

            (b)    The District Court Appropriately Evaluated the Value and Benefits Provided by the Simmons Settlement to the DPP Class Members ........................... 29

    C.    The Release of Claims that Were or Could have Been Alleged in the Action Complies with Controlling Precedent ........................... 34

        1.    Appellants' Claim that a Class Action Settlement Cannot Release Uncertified Claims is Contradicted by Controlling Precedent ................................................................ 35

        2.    Appellants' Arguments Regarding the "Factual Predicate" of Their Bid-rigging Claims do Not Undermine the Appropriateness of the Release and Misrepresent the Nature of Appellants' Claims ...................... 37

        3.    Appellants' Argument Regarding the Viability of Bid-Rigging Claims does Not Support Reversing Approval of the Simmons Settlement ......................................................... 40

    D.    Appellants' Attempts to Challenge the Class Certification are Procedurally Defective and Unconvincing .......................................... 43

1. Appellants Cannot Establish Jurisdiction or Standing as an Aggrieved Party Necessary to Challenge the Court's Class Certification Order ........................................................... 43

2. Appellants Fail to Establish any Issues that Merit Overturning the Court's Class Certification Order ................... 45

E. Appellants' Challenge to the Class Notice does Not Support Overturning the Simmons Settlement .................................................. 48

(a) Appellants Were Not Prejudiced or Aggrieved by any Claimed Deficiency or Lack of Disclosure in the Notice ...................................................................... 48

(b) The Court-Approved Class Notice Complied with Rule 23 .......................................................................... 49

VII. CONCLUSION ........................................................................... 52

CERTIFICATE OF COMPLIANCE ........................................................ 53

CERTIFICATE OF SERVICE ............................................................... 54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  725 F.3d 803 (7th Cir. 2013) ..................................................................47

*Air Lines Stewards & Stewardesses Ass'n Loc. 550 v. Am. Airlines, Inc.*,
  455 F.2d 101 (7th Cir. 1972) ..................................................................49

*In re Allstate Ins. Co.*,
  400 F.3d 505 (7th Cir. 2005) ..................................................................28

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................44, 48

*Arandell Corp. v. Xcel Energy, Inc.*,
  No. 07-cv-076, 2022 WL 2314717 (W.D. Wis. Dec 27, 2022) ........................38

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  No. 94 C 897, 1996 WL 167347 (N.D. Ill. Apr. 4, 1996) ..................................50

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017)..........................................................6

*In re Broiler Chicken Antitrust Litig.*,
  No. 16-cv-8637, 2023 WL 7220170 (N.D. Ill. Nov. 2, 2023)...........................7

*In re Broiler Chicken Antitrust Litig.*,
  No. 16-cv-8637, 2022 WL 1720468 (N.D. Ill. May 27, 2022) ...............6, 43, 46

*Burgess v. Citigroup Inc.*,
  624 F. App'x 6 (2d Cir. 2015) ..................................................................39

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ..............................................................31, 32

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ..................................................................35

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ..............................................................28

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ...............................................21, 30, 31

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
807 F. App'x 752 (10th Cir. 2020) ......................................36, 37, 49

*Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*,
439 F.3d 165 (2d Cir. 2006) ................................................47

*Freeman v. Berge*,
68 F. App'x 738 (7th Cir. 2003) ...............................................21, 28

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ...............................................45

*Hisps. United of DuPage Cnty. v. Vill. of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) ......................................30

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ...............................................21, 22

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
702 F.3d 364 (7th Cir. 2012) ...............................................47

*Kaufman v. Am. Express Travel Related Servs. Co.*,
877 F.3d 276 (7th Cir. 2017) ...............................................30, 32

*Kincade v. General Tire & Rubber Co.*,
635 F.2d 501 (5th Cir. 1981) ...............................................46

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011) ...............................................36

*Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg.
Sales Practices and Prods. Liab. Litig.*,
91 F.4th 174 (4th Cir. 2024) ...............................................38, 41, 42

*Martin v. Reid*,
818 F.3d 302 (7th Cir. 2016) ...............................................30, 31

*McAdams v. Robinson*,
26 F.4th 149 (4th Cir. 2022) ...............................................37

*Mirfasihi v. Fleet Mortg. Corp.*,
356 F.3d 781 (7th Cir. 2004) ....................................................................27, 47

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ....................................................................31

*Oswald v. McGarr*,
620 F.2d 1190 (7th Cir. 1980) ....................................................................35, 37

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) ....................................................................46

*Patterson v. Stovall*,
528 F.2d 108 (7th Cir. 1976) ....................................................................21, 31

*Remijas v. Neiman Marcus Grp., LLC*,
341 F. Supp. 3d 823 (N.D. Ill. 2018)....................................................................47

*Reynolds v. Beneficial Nat. Bank*,
288 F.3d 277 (7th Cir. 2002) ....................................................................47

*Richards Lumber and Supply Co. v. United States Gypsum*,
545 F.2d 18 (7th Cir. 1976) ....................................................................35, 37

*Sanderson Farms Inc. v. Amory Invs. LLC*,
No. 22-8007, Dkt. 25 (7th Cir. Jul. 18, 2022) ....................................................................6, 44

*Sandoval v. M1 Auto Collisions Centers*,
No. 13-CV-03230-EDL, 2017 WL 11679905 (N.D. Cal. Mar. 20,
2017) ....................................................................28

*Senegal v. JPMorgan Chase Bank, N.A.*,
939 F.3d 878 (7th Cir. 2019) ....................................................................44, 48, 49

*Smith v. Sprint Commc'ns Co. L.P.*,
No. 99 C 3844, 2003 WL 103010 (N.D. Ill. Jan. 10, 2003) ....................................................................38

*Tennille v. W. Union Co.*,
785 F.3d 422 (10th Cir. 2015) ....................................................................49

*United States v. Fenzl*,
670 F.3d 778 (7th Cir. 2012) ....................................................................50

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  725 F. App'x 560 (9th Cir. 2018) ....................................................38

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ......................................................35, 37

*Walsh v. Great Atl. & Pac. Tea Co.*,
  726 F.2d 956 (3d Cir. 1983) ............................................................46

*Williams v. Dieball*,
  724 F.3d 957 (7th Cir. 2013) ..........................................................33

**Other Authorities**

Fed. R. Civ. Proc. 23 .........................................................*passim*

Fed. R. Civ. Proc. 23(a)(4)............................................45, 46

Fed. R. Civ. Proc. 23(e)(2)................................................21

Fed. R. Civ. Proc. 54(b) .....................................................3

# I. <u>INTRODUCTION</u>

Appellants, who are admittedly not willing members of the certified Direct Purchaser Plaintiff Class ("DPP Class" or "Class"), find themselves in a predicament of their own making. They filed a related individual case in the *In re: Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (N.D. Ill.) ("Action"), which in their own words arises from a "price-fixing conspiracy, [in which] Defendants' ultimate goal was the same—to artificially and illegally inflate market-wide prices of Broiler chicken."[1] However, they chose not to opt out of the DPP Class, as required by Federal Rule of Civil Procedure ("Rule") 23, which was necessary to preserve their individual claims. Appellants knew full well—because both the district court and common sense told them so—that by failing to opt out, they would be bound by the resolution of this case (be it by trial or settlement) by the DPP Class. After the DPP Class settled with Simmons (and apparently dissatisfied with their fair share), Appellants seek to scuttle the settlement because it does not give them special benefits for their bid-rigging claims.

Appellants cannot have it both ways. If they wanted to pursue their bid-rigging claims they could have filed a separate action, as they did, and opted out of the DPP Class that chose not to pursue those claims, as they did not. This was the

---

[1] *See* Appellants' Opposition to Motion to Exclude Bid-Rigging Claims from the *In re Broiler Chicken Antitrust Litigation* Consolidated Proceedings. (*See* Supplemental Appendix ("S.A.") 167; Record ("R.") 3732, at 1.)

straightforward path recognized by every other plaintiff who had filed their own lawsuit in the Action. But Appellants could not pursue a separate action *and* remain as members of the DPP Class. It is universally understood that class representatives and class counsel are authorized to compromise all related claims that were brought or could have been brought against settling defendants. This must be so because in settling a case, defendants seek litigation peace; they don't want to settle and then get sued again by the same plaintiffs for the same circumstances, pursuing a slightly different theory. Represented by experienced counsel, Appellants knew this, yet chose not to opt out when they had an opportunity to do so. Now that it's too late for them to opt out, Appellants want to act as spoilers, depriving the remaining DPP Class of the benefits of their hard-earned settlement of over $8 million from defendant Simmons.

As the district court correctly recognized, Appellants' "concern here is not the value of the settlement. It is that they are bound by the settlement at all. But [Appellants] had an easy and well-established mechanism for avoiding this predicament in the Rule 23 opt-out procedures. They missed the deadline. That is not a reason to find the settlement does not provide substantial value to the Class." (Appendix ("A.") 0009; R. 7083, at 9.) Appellants cannot meet the heavy burden of demonstrating the district court abused its discretion in granting final approval to the Simmons settlement. This Court should affirm the district court's final approval

order and allow members of the DPP Class to receive the benefits of the Simmons settlement.

## II.  <u>JURISDICTIONAL STATEMENT</u>

Appellants do not present a complete and correct statement of the limited jurisdiction and scope of this appeal. Since the Action is still pending, this Court's jurisdiction to review final approval of the Simmons settlement arises from the district court's entry of judgment under Rule 54(b), which holds that in an action involving multiple parties "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." *See* Fed. R. Civ. Proc. 54(b). Here, the basis for the Court's jurisdiction is limited to the district court's rulings relating to final approval of the Simmons settlement and granting final judgment as to defendant Simmons. (A. 0016; R. 7085, at 6 (directing entry of final judgment as to the parties to the Simmons settlement agreement).) Any "other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties…." Fed. R. Civ. P. 54(b).

# III.  STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Did the district court act within its substantial discretion in finding that the $8 million settlement between the DPP Class and Defendant Simmons was fair, reasonable, and adequate?

2.     Was it appropriately within the scope of the Simmons settlement to release all Class member antitrust claims that were or could have been alleged in the Action as part of the Simmons settlement?

3.     Do Appellants satisfy necessary jurisdictional and standing requirements to challenge the district court's order certifying the DPP Class?

4.     If review of the class certification order is permissible, does Appellants' desire to preserve their individual bid-rigging claims give rise to an "intra-class conflict" that renders the district court's order granting class certification an abuse of discretion?

5.     Did the court-approved notice to the Class members meet the requirement of Rule 23, and if not, were Appellants (who were active litigants in the case) prejudiced thereby?

# IV.  STATEMENT OF THE CASE

## A.    The DPP Class Case was Litigated Over Seven Years with an Extremely Well-Developed Record

This is an antitrust class action against certain producers of Broilers.[2] Judge Thomas M. Durkin has presided over the litigation since its inception, and the record is extremely well developed with over 7,000 docket entries. (*See* ECF No. 1-1, at 832.)[3]

DPPs commenced this litigation on September 2, 2016, when they filed a class action lawsuit on behalf of all direct purchasers of Broilers in the United States, without the benefit of any government investigation or public disclosure of the existence of a conspiracy. (A. 0419; R. 1.) The Second Amended and Consolidated Complaint ("SACC") filed by the DPP Class alleged Defendants violated the Sherman Act through multiple means, including coordinated supply restraints, exchange of competitively sensitive information through the data firm Agri Stats, and manipulation of the Georgia Dock pricing index. (S.A. 001-136; R. 212.) The SACC alleged a single cause of action for violation of the Sherman Act, which caused members of the DPP Class to be "injured in their business and property by paying more for Broilers than they would have paid and will pay in the absence of the conspiracy." (S.A. 001-136; R. 212.)

---

[2] "Broilers" are chickens that are raised for human consumption.
[3] All references to "ECF No." herein refer to the docket for this appeal.

On November 20, 2017, the district court denied Defendants' Motions to Dismiss the SACC. *See In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772 (N.D. Ill. 2017).

The DPP Class conducted a thorough investigation and substantial discovery during the course of the litigation. The DPP Class obtained responses to numerous interrogatories and received over 8 million documents. (S.A. 229; R. 7053, at 2.) The DPP Class, along with other plaintiffs, took over 100 depositions. (*Id.*) The DPP Class also responded to written discovery, produced documents, and appeared for depositions. (*Id.*)

After extensive briefing, including the exchange of expert opinion reports and evidence relating to class certification issues, the district court certified the following DPP Class:

> All persons who purchased raw Broilers [directly] from any of the Defendants or their respective subsidiaries or affiliates either fresh or frozen, in the form of: whole birds (with or without giblets), whole cut-up birds, or parts (boneless or bone in) derived from the front half of the whole bird, for use or delivery in the United States from December 1, 2008 until July 31, 2019.

*In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637, 2022 WL 1720468, at *2, 21 (N.D. Ill. May 27, 2022). This Court denied Defendants' Rule 23(f) petition for an interlocutory appeal of the class certification decision. *Sanderson Farms Inc. v. Amory Invs. LLC*, No. 22-8007, Dkt. 25 (7th Cir. Jul. 18, 2022).

Even after class certification, the DPP Class continued to face significant risks, including summary judgment and trial. The district court denied summary judgment for several Defendants, but granted summary judgment for Defendants Agri Stats, Case, Fieldale, Foster Farms, Claxton, Perdue, and Wayne Farms, as well as all Plaintiffs' claims regarding the manipulation of the Georgia Dock. *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637, ___ F. Supp. 3d ___, 2023 WL 7220170 (N.D. Ill. Nov. 2, 2023) (publication pending).

The DPP Class eventually proceeded to trial against Sanderson Farms, the only Defendant who did not settle or obtain summary judgment. After a multi-week trial, the jury returned a verdict for Sanderson Farms, finding that the DPP Class had not proved the existence of a conspiracy in the Broiler industry. (S.A. 227; R. 7014.)

**B.** **The DPP Class Secured Over $284 Million in Settlements in a Case Fraught with Risks**

Despite the substantial risks and setbacks from inception through trial, the DPP Class secured $284,651,750 in total settlements from thirteen defendant families, including Simmons. (S.A. 228-232; R. 7053.) Each of these settlements, including the settling Defendant, amount and date, is set forth in the chart below:

| Defendant Family | Settlement Amount | Date | Status |
|---|---|---|---|
| Fieldale Farms | $2,250,000 | 07/27/2017 | Finally Approved |
| Amick Farms | $3,950,000 | 12/04/2019 | Finally Approved |
| Peco | $4,964,600 | 12/05/2019 | Finally Approved |
| George's | $4,097,000 | 12/05/2019 | Finally Approved |
| Pilgrim's | $75,000,000 | 01/29/2021 | Finally Approved |
| Tyson | $79,340,000 | 01/23/2021 | Finally Approved |
| Mar Jac | $7,975,000 | 08/18/2021 | Finally Approved |
| Harrison Poultry | $3,300,000 | 09/11/2021 | Finally Approved |
| Simmons | $8,018,991 | 05/24/2023 | On Appeal |
| Mountaire | $15,899,826 | 08/14/2023 | Finally Approved |
| O.K. Foods | $4,856,333 | 08/25/2023 | Finally Approved |
| Koch | $47,500,000 | 09/22/2023 | Preliminarily Approved |
| House of Raeford | $27,500,000 | 09/14/2023 | Preliminarily Approved |
| **Total** | **$284,651,750** | | |

The district court approved ten DPP Class settlements—denoted in the chart above as "Finally Approved"—without a single objection or appeal. The Simmons settlement is the only DPP Class settlement to date that has been challenged, and the Appellants are the only objectors and appellants. The Koch and House of Raeford settlements have been granted preliminary approval. (S.A. 233-236; R. 7070.) Appellants have stated their intent to object to those two settlements on the same basis as the Simmons settlement. (A. 2254, R. 6930.)

Under the settlement Simmons paid $8,018,991 to the DPP Class in exchange for a release of all claims that were or could have been alleged in the Action.

(A. 1854; R. 6597-1.) The terms of the Simmons settlement and release are substantially similar to the other DPP Class settlements, including those that have been finally approved without any objections.

### C. Appellants Filed a Related Opt-Out Case and Were Active Participants in the Action

Throughout the Appellants' Brief[4], Appellants strain to distinguish their bid-rigging claims from the Class case. But Appellants' recharacterizations are directly contradicted by their own pleadings, arguments and submissions in the district court, where they emphasized just how related their bid-rigging claims were to the Class action. In turn, the district court ruled that these bid-rigging claims were related to and consolidated with the Class action and could not be severed or bifurcated. These filings and rulings, summarized below, show that Appellants' bid-rigging antitrust claims not only could have been, but actually were alleged in the Action.

#### 1. Appellants Filed a Related Opt Out Case Containing Claims, Products, and Conduct that Overlap with the Class Case

Appellants are members of the DPP Class who opted out of earlier DPP Class settlements and filed their own related cases. Appellants accompanied their lawsuit with a "Motion for Reassignment Based on Relatedness," pursuant to Northern

---

[4] "Brief" refers to Appellants' Brief and Required Short Appendix, ECF No. 27.

District of Illinois Local Rule 40.4.[5] (S.A. 137-140; R. 3654.) In that motion, Appellants asserted that relation and reassignment to the district court was appropriate because, "(2) the cases involve the same issues of fact or law;" or "(3) the cases grow out of the same transaction or occurrence." (S.A. 137; R. 3654, at 1.) Appellants then set forth the relationship between their case and the pending DPP Class, as follows:

> 7. The present case, those already found to be related, and the newly filed Boston Market Action are all related because all involve many of the same issues of fact and law and grow out of the same basic occurrence.

> 8. The present case and the related litigations allege claims based on the same transaction or occurrence—a conspiracy among Defendants to artificially reduce or suppress Broiler Chicken supply, fix Broiler Chicken prices, and rig bids for purchases of Broiler Chickens.

> 9. Moreover …. most of the Defendants in the present matter and related litigations are nearly identical. See, e.g., Case Nos. 18-cv-700, 18-cv-702, 18-cv-4000, and 18-cv-4534.

> 10. The same law and authorities apply to Sherman Act claims and relate to the same core of operative fact surrounding the alleged conspiracy.

(S.A. 138; R. 3654, at 2.)

---

[5] Appellants omitted their Motion for Reassignment from the appellate record and their Brief. Instead, they limited their citation to their complaint which was filed as an exhibit to the motion.

Appellants' complaint confirms that their individual case is related to the DPP Class case, because it asserts "a long-running conspiracy … extending from at least January 2008 through at least 2017 … to restrain production, manipulate price indices, fix prices and rig bids, the purpose and effect of which was to fix, raise, stabilize and maintain prices of chicken meat throughout the United States." (A. 0535; R. 3654-1, at 1.)[6] The complaint alleged a single cause of action under the Sherman Act, which Appellants alleged resulted in their "paying more for Broilers than [they] would have paid and will pay in the absence of the Conspiracy." (*Id.*, at 419.)

The district court granted Appellants' motion for relatedness and further held that the cases should be consolidated under Rule 42(a), as part of the Action. (S.A. 141; R. 3663.)

**2.  Appellants and the District Court Recognized the Relationship Between Bid-Rigging and the Other Broiler Antitrust Claims**

After Appellants filed their complaint, Defendants moved to strike or sever the bid-rigging claims and argued that bid-rigging constituted a separate and distinct conspiracy. (A. 0660; R. 3688.) The Class and Appellants jointly opposed the motion, and argued that bid-rigging, market manipulation, and supply restraints were

---

[6] Although this complaint was filed by one Appellant, it is representative of the allegation asserted by all Appellants, who are represented by the same counsel.

related mechanisms by which Defendants fixed Broilers prices in violation of the

Sherman Act. (S.A. 142-162; R. 3736.)

Appellants also filed a separate brief opposing the motion to sever, which

asserted:

> This case is about Defendants' conspiracy for over a decade to inflate the prices of Broiler chicken sold in the United States. This was the subject of the case before the New DAPs [*i.e.*, Appellants] filed their complaints, and remains the subject of the case now.
>
> The factual and legal issues presented in the New DAPs' complaints track the allegations set forth in prior plaintiff complaints. Indeed, as Defendants acknowledge, the New DAPs' complaints incorporate the common supply restriction and Georgia Dock allegations that are in all of the Class and DAP complaints. And while the New DAPs describe in further detail an element of Defendants' price-fixing conspiracy, **Defendants' ultimate goal was the same—to artificially and illegally inflate market-wide prices of Broiler chicken.**

(S.A. 167; R. 3732, at 1 (emphasis added).) Appellants further explained: "It is for

this reason that New DAPs have not asserted a 'separate case' or a 'new case theory.'

To the contrary, the New DAP complaints allege a single violation of the Sherman

Act predicated on an overarching price-fixing conspiracy by Defendants involving

Broilers that incorporates the supply restriction and Georgia Dock facts asserted by

all of the Classes and DAPs." (S.A. 176; R. 3732, at 10.)

The district court agreed with the Class and Appellants, and denied

Defendants' request to strike or sever the bid-rigging allegations, because "there is

not a principled reason to force the bid-rigging claim to proceed in a separate action."

(A. 0691; R. 3835, at 4.) The district court's decision was based on the fact that:

> There is a substantial relationship between the alleged bid-rigging claim and the alleged supply reduction and Georgia Dock price index manipulation claims. All three claims have the same goal of maintaining a high price for Broilers, involving the same industry and defendants. These similarities mean that discovery for all three claims is thoroughly intertwined in terms of the scope of relevant documents, document custodians, and deponents.

Notwithstanding this finding, the district court initially bifurcated the market manipulation and bid-rigging claims, in order "to expedite and economize the process of bringing the supply reduction and Georgia Dock claims to resolution." (*Id.*, at 6.) The DPP Class then filed the operative Fifth Amended and Consolidated Class Action Complaint, specifically adding bid-rigging allegations as permitted by the district court's order. (A. 0698; R. 3919.)

### 3. Appellants Advocated Against Bifurcating of Their Bid-Rigging Claims Resulting in a Two-Track Selection Process

Certain individual plaintiffs, including Appellants, moved to reconsider the bifurcation order on grounds that the order "improperly split apart this overarching conspiracy claim in violation of well-established law.…" (S.A. 201-202; R. 4980 (Appellants' joinder in the motion to reconsider).)

The district court granted the motion to reconsider and found "that its decision to bifurcate this case was premature and must be vacated." (*See* A. 1164; R. 5128,

at 4.) Rather than bifurcate bid-rigging claims and split the antitrust conspiracy, the court constructed two trial tracks, that plaintiffs could select in their discretion. Track 1 would focus on the Georgia Dock and production restraint price fixing claims. (*See* A. 1164-5; R. 5128, at 4-5.) Track 2 included bid-rigging allegations, in addition to the aforementioned production restraints and Georgia Dock manipulation claims. (*Id.*)

On December 20, 2021, the district court held a hearing to discuss the structure of the litigation and the trial track selection process. At that hearing, the district court stated:

> No bid-rigging claims are going to be tried in Track One either as stand-alone claims or with bid-rigging as an element or component of a broader conspiracy claim premised on market manipulation claims….

> Track One will not get another bite at the apple after a Track One trial, meaning -- if you're in Track One, that will be your only trial. If you want to allege bid-rigging as part of an overall conspiracy or as some other type of your case in chief, go to Track Two.

(A. 1201; R. 5322.)

The DPP Class elected to "proceed on Track One to try their claim under Section 1 of the Sherman Act against Defendants." (A. 1188; R. 5307.)

**D.** **The District Court Provided the Class Members with Multiple Rounds of Notice and Opportunities to Opt Out**

    **1.** **Appellants and Other Class Members Opted-Out of Pre-Certification Settlements and Filed Individual Related Lawsuits**

Throughout this litigation, members of the DPP Class were regularly apprised of rulings and case developments. Prior to the district court's certification of the DPP Class, potential class members received multiple rounds of notice relating to the approval and distribution of settlements. In response to these settlement class notices, numerous members of the DPP Class, including Appellants opted out and filed their own individual lawsuits. This demonstrates there was no confusion on the necessity of opting out of the DPP Class in order to preserve bid-rigging claims. After filing their own individual lawsuit, Appellants' attorneys received all filings in the Action via ECF. Appellants were fully apprised of the procedural status of the DPP Class, as well as the implications of remaining in the DPP Class or opting out.

    **2.** **All Direct Action Plaintiffs, Except Appellants, Recognized the Need to Opt Out of the Litigation Class to Preserve Their Individual Claims**

Following certification of the DPP Class, potential Class members received yet another notice, and were provided a final opportunity to opt out prior to the district court's ruling on any dispositive motions or trial (hereinafter "Class Notice"). (A. 1818; R. 6195.) The Class Notice left no doubt that Class members must exclude themselves to preserve their individual antitrust claims involving the purchase of Broilers:

> **Unless you exclude yourself … you will remain in the Certified Class**, which means that you cannot sue, **continue to sue**, or be part of any other lawsuit against the Non-Settling Defendants and their affiliates that pertains to the claims in this case.
>
> …if you wish to pursue your own separate lawsuit against the Non-Settling Defendants, **you must exclude yourself by submitting a written request to the Notice Administrator** stating your intent to exclude yourself from the Certified Class…
>
> Unless you exclude yourself, you give up the right to sue the Non-Settling Defendants for the claims set forth in the litigation. **If you have a pending lawsuit against one or more of the Defendants, speak to your lawyer in that lawsuit immediately to determine whether you must exclude yourself from this Class to continue your own lawsuit against the Non-Settling Defendants**.

(A. 1826; R. 6195 (emphasis added).) The deadline to opt out of the certified class was April 4, 2023.

Almost every single Plaintiff who had previously opted out of settlement classes, including Track 2 plaintiffs, followed these instructions and filed timely and valid requests to opt out in response to the notice. Two groups of Track 2 plaintiffs, SGA and L. Hart neglected to do so by the deadline, but three months later sought the district court's leave to opt out late. They conceded that their failure to timely do so was inadvertent, and that they should be bound by the Simmons settlement as a result. The district court agreed. (*See* S.A. 203; R. 6729.) Among all of the individual plaintiffs, Appellants were the only ones who claimed that they did not need to opt out of the DPP Class to preserve their individual Broiler antitrust claims.

**E.** **The District Court Rejected Appellants' Argument that Filing Their Related Individual Lawsuit Obviated the Need to Opt Out of the Class**

Appellants took no action to preserve their individual claims for nearly five months after the opt-out deadline. On September 7, 2023—five days before the DPP Class trial commenced—Appellants filed a motion to confirm their opt-out status. (A. 2183; R. 6841.) Appellants claimed that they did not need to follow the opt-out procedure in the Class Notice because the filing of the separate Track 2 case was sufficient to demonstrate their intent to opt out. (*Id.*)

The district court rejected this argument because it conflicted with the plain requirements of the court-ordered notice and Rule 23. (A. 2252; R. 6872.) Accordingly, Appellants were bound by the DPP Class settlements with Defendants Simmons, Mountaire, O.K. Foods, House of Raeford, and Koch, all of which occurred after the opt-out deadline had passed. (*Id.*)

**F.** **Appellants Filed a Meritless Objection to the Simmons Settlement Focused on Their Individual Bid-Rigging Claims**

Having barred themselves from pursuing their claims as individual plaintiffs, Appellants moved for "clarification" of the district court's order denying their motion to confirm their opt-out status, and argued that the releases in the Simmons, House of Raeford, and Koch settlements should not bar their individual bid-rigging claims against those defendants. (A. 2254; R. 6930.) Appellants then objected to the Simmons settlement on these same grounds. (A. 2334; R. 7040.)

These filings directly contradicted Appellants' prior submissions to the district court which asserted that bid-rigging was one of the related means used by Defendants to fix the price of Broilers. (*See* Section III.C. above.) In an about-face, Appellants claimed that their bid-rigging claims were "completely different ... and based on an entirely distinct factual predicate" so they could not be released as part of the Simmons settlement. (A. 2254; R. 6930.)

The district court entered a detailed order on December 11, 2023, fully addressing and denying Appellants' objection to the Simmons settlement and their motion for "clarification." (A. 0001; R. 7083.) On December 12, 2023, the district court held a hearing regarding final approval of the Simmons, Mountaire, and O.K. Foods settlements where it once again assessed the factors supporting the fairness, reasonableness, and adequacy of the settlements. (A. 1191-1265; R. 5322.) Pursuant to these findings, the district court granted final approval of the Simmons settlement and entered final judgment with respect to the DPP Class claims against Defendant Simmons. (A. 0011; R. 7085.) Appellants filed their notice of appeal arising from the Simmons final approval order on January 8, 2024. (ECF No. 1.)

## V. __SUMMARY OF THE ARGUMENT__

Appellants cannot meet the extraordinarily high burden of demonstrating that the district court abused its discretion in granting final approval to the Simmons settlement. This appeal is narrow and focuses solely on the impact of the Simmons

settlement on the Appellants' individualized bid-rigging antitrust claims. Having remained in the DPP Class, Appellants' only remaining means for preserving these individual claims is to undermine and object to the Simmons settlement. But as the district court recognized, this would result in collateral damage to all other members of the DPP Class who have responded to the settlement with universal approval and want to participate in the significant benefits it provides.

The district court acted well within its substantial discretion and appropriately found that the Simmons settlement was fair, reasonable, and adequate, based on criteria and factors articulated by this Court, and overruled Appellants' objections thereto. Appellants' argument that the district court committed reversible error because it did not conduct a separate analysis of their individual bid-rigging claims, is not supported by the law or the facts.

Appellants' claim that the Simmons settlement release is impermissibly broad because it reaches their bid-rigging claims is misguided and unpersuasive. The release of claims that were or could have been alleged in the Action provided in the Simmons settlement, comports with well-established precedent regarding the permissible scope class action releases. As the district court found, the application of the release to Appellants' bid-rigging claims is not based on any impermissible overbreadth, but instead is based on the acknowledged inter-relationship between Appellants' bid-rigging claims and the other antitrust claims in the Action.

Appellants' newfound attempt to distinguish their bid-rigging claims from the related antitrust claims in the case is not credible; it contradicts Appellants' own filings, the district court's orders, and common sense.

Appellants' challenges to the court's certification of the DPP Class fail for multiple reasons. First, the limited jurisdiction of this appeal arising from the Simmons final judgment does not permit a challenge to the interlocutory order certifying the litigation Class; it must await review of the final judgment of the entire Action. Second, the central premise of Appellants' challenge to class certification, that a class action settlement can only release certified claims, is incorrect and has been universally rejected. Third, Appellants cannot establish that class counsel and the class representatives breached their fiduciary duties by entering into a settlement that benefits the "class as a whole." (Brief, at 50.)

Finally, Appellants' challenges to the sufficiency of the Class Notice fail because: (1) as plaintiffs in the case who were represented by experienced counsel, Appellants admittedly had actual notice of all filings in the case, including those relating to class certification and DPP Class's Track 1 election; and (2) the court-approved Class Notice contained all information required by Rule 23 and clearly described the importance of opting out to preserve Appellants' individual price-fixing claims and the procedure to do so. The fact that Appellants did not opt out has

nothing to do with the sufficiency of notice or knowledge, but instead appears to be a strategic decision gone wrong.

## VI. <u>ARGUMENT</u>

### A. <u>Standard of Review</u>

The district court may approve settlement of a class action if it concludes that it "is fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2). "[R]eview of the district court's decision to approve the agreement, however, is narrow; [this Court] will reverse only if the district court abused its discretion." *Freeman v. Berge*, 68 F. App'x 738, 741 (7th Cir. 2003). "[A]n appellate court will only intervene and upset a settlement upon a clear showing that the trial court committed an abuse of its discretion." *Patterson v. Stovall*, 528 F.2d 108, 112 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). The "essence of settlement is compromise," and a settlement "will not be rejected solely because it does not provide a complete victory to the plaintiffs" *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). The settlement should not be overturned unless there is a "showing that the amounts received by the beneficiaries of the settlement were <u>totally inadequate</u>." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 891 (7th Cir. 1985) (emphasis added).

**B.**   **The District Court Acted Within Its Substantial Discretion in Ruling the Simmons Settlement was Fair, Reasonable, and Adequate**

Appellants cannot meet the extraordinarily high burden of demonstrating that the district court abused its discretion in granting final approval to the Simmons settlement. In deciding whether to approve a settlement, a district court should examine: (1) the strength of the plaintiffs' case compared to the amount of the settlement offer; (2) an assessment of the likely complexity of a trial; (3) the length and expense of the litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and amount of discovery completed at the time of settlement. *See Isby*, 75 F.3d at 1199. "[T]he first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Id*.

The district court appropriately evaluated the sufficiency of the Simmons settlement by considering the relevant factors supporting final approval. In doing so the district court relied on its significant knowledge of the Action and the relevant claims and defenses at issue. Appellants' objection, which is limited to the value of their individualized bid-rigging claims, does not provide any basis for overturning the district court's order and depriving the DPP Class members of the substantial benefits and value offered by the Simmons settlement.

1. **The District Court Relied on Its Intimate Knowledge of the Case and Followed this Circuit's Guidance in Granting Final Approval to the Simmons Settlement**

After presiding over the litigation for more than seven years, including a lengthy trial that resulted in a defense verdict, the district court was uniquely qualified to assess the fairness, reasonableness, and adequacy of the settlement between the DPP Class and Simmons. The district court entered a detailed order on December 11, 2023, denying Appellants' objections to the Simmons settlement (A. 0001; R. 7083); held a final approval hearing on December 12, 2023, in which it evaluated the Simmons settlement and the factors supporting its approval (A. 0021-0023; R. 7118, at 5:1-7:25); and entered an order granting final approval and entering judgment in relating to Defendant Simmons on December 12, 2023 (A. 0023; R. 7118, at 7:24-25).

Consistent with this Court's precedent, the district court's most important consideration was in evaluating the relative strength of the case as compared to what the defendant offered by way of settlement. The district court found that the settlement provided "significant amounts of money for claims where the amount of risk is significant." (A. 0022; R. 7118, at 6:12-13.) This was not based on speculation; by this time, the district court had presided over the Action since its inception, granted summary judgment to some Defendants and denied it to others, and presided over a lengthy trial against defendant Sanderson Farms, which resulted

in a defense verdict. Had Simmons prevailed at summary judgment or trial, "none of the money that is the subject of the settlement agreement would have been awarded. The plaintiffs would've walked away empty-handed. And so for that reason, the settlements eliminated a significant amount of risk to members of the class." (*Id.*) The district court also found:

> [T]he defense verdict at trial [for Defendant Sanderson] demonstrates that this is not an easy case for the Class. The Class's settlements with all defendants but the one that went to trial demonstrates that Class counsel recognizes the difficulties in this case. The settlement amount certainly accounts for this difficulty. The trial loss is a post hoc justification for the Class's decision to settle with Simmons for the amount it did.

(A 0008-0009; R. 7083, at 8-9.)

The district court recognized that the substantial value of the Simmons settlement would not have been realized without a complete release of all antitrust claims including any bid-rigging claims, because "[n]o rational defendant would settle without language broad enough to have covered all claims, including bid-rigging claims." (A. 0002-0003; R. 7083, at 2-3.) The DPP Class's Track 1 selection decision was also reasonable and valuable to the class, as it allowed the DPP Class to advance their claims against Simmons and other Defendants and procure a settlement. (A. 0008; R. 7083, at 8 ("Class Counsel's decision to proceed on Track 1, and drop bid-rigging claims, was key in creating an environment that encouraged Defendants to settle.").) The district court found there was sufficient value obtained

by the settlement for all claims that were included in the release, as well as the DPP Class Track 1 selection which ensured the case would move forward towards settlements rather than be mired in a lengthy stay. (A. 0007-0009; R. 7083, at 7-9.)

All other relevant factors articulated by this Court supported approval of the Simmons settlement. The reaction of the Class was overwhelmingly in favor of the Simmons settlement, as demonstrated by the fact that "No class members have objected to the settlement other than the DAPs [*i.e.*, Appellants]. This is strong evidence that the settlement amount is a substantial recovery. The [district] Court cannot ignore the fact that the only objectors here are those who failed to opt-out on time." (A. 0009; R. 7083, at 9.)

The district court also found the Simmons settlement which was "reached through confidential, protracted, and arm's length negotiations; result of extensive, good faith, and hard-fought negotiations between knowledgeable and skilled counsel were entered into after extensive factual investigation and legal analysis. And in the opinion of experienced co-lead class counsel are fair, reasonable, and adequate." (A. 0021; R. 7118, at 5:19-20).) The stage of the proceedings supported the settlement since the case was settled shortly before trial, while Simmons' motion for summary judgment was pending. (*Id.*)

2. **Appellants' Objection Based on the Value of Their Individual Bid-Rigging Claims does Not Establish that the District Court Abused its Discretion in Approving the Simmons Settlement**

In order to bolster their challenge to the Simmons settlement, Appellants repeatedly assert that they receive "no consideration" for their bid-rigging claims. (*See, e.g.*, Brief, at 26, 43.) As the district court recognized, this misrepresents the Simmons settlement, which provides consideration for Appellants' eligible Broiler purchases by allowing Appellants to recover a *pro rata* portion of the settlement proceeds based on the value of their purchase amounts. (A. 0007-0008; R. 7083, at 7-8.) The district court's rejection of Appellants' "no consideration" argument is consistent with Appellants' own admissions in the proceedings below that their bid-rigging claims "allege claims based on the same transaction or occurrence." (S.A. 138; R. 3654, at 2.) Namely, "a price-fixing conspiracy by Defendants involving Broilers that incorporates the supply restriction and Georgia Dock facts asserted by all of the Classes and DAPs." (S.A. 176; R. 3732, at 10.) The $8 million Simmons settlement thus assures them consideration for each of their Broiler purchase tainted by antitrust violations.[7]

---

[7] In a footnote, Appellants assert that they have $8 billion in purchases that should be eligible for the DPP Class litigation damages model. This has no bearing on the merits of their appeal, which arises exclusively form the impact of the settlement on their bid-rigging claims, rather than the overall value of the Simmons settlement. Moreover, this number is not supported by any evidence and appears to be grossly inflated because the Appellants' commerce makes up an extremely small portion of

Accordingly, Appellants' true challenge to the Simmons settlement is not that it does not provide them with consideration, but rather that they want "additional compensation for their bid-rigging claims." (Brief, at 48.) As Appellants admit, "[t]he fact that the[y]… will be treated no differently than other class members without viable bid-rigging claims is precisely the issue." (*Id.*) But their attempt to extract such "separate consideration" from the Class settlement for their individual claims is inconsistent with commonly accepted class-settlement procedures and cannot establish that the district court abused its discretion in approving the settlement.[8]

### (a) The Court-Approved Opt-Out Procedures Allowed Appellants to Preserve the Right to Obtain "Separate Consideration" for Their Individual Bid-Rigging Claims

The core premise of Appellants' objection – that they did not have an opportunity to preserve or seek additional or separate value for their individual bid-rigging claims – is flawed. In truth, Appellants "had an easy and well-established mechanism for avoiding this predicament in the Rule 23 opt-out procedures. They

---

the DPP Class. To the extent there is any dispute regarding the Appellants' purchases, the settlement administration process permits Class members to provide additional evidence of their Broiler purchases, to ensure they are fully compensated for their *pro rata* portion of the Simmons settlement.

[8] This case is therefore completely different than *Mirfasihi v. Fleet Mortg. Corp.*, where this Court found a deficiency in a settlement where members of a distinct subclass would not be able to receive any portion or participate in the settlement proceeds. 356 F.3d 781, 782-83 (7th Cir. 2004).

missed the deadline. That is not a reason to find the settlement does not provide substantial value to the Class." (A. 0009; R. 7083, at 9.) The district court's ruling comports with the precedent of this Court and others, which have recognized that Rule 23 opt-out procedures provide the appropriate mechanism for individual class members to or seek separate consideration for their individual claims. *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005) ("'[W]hen damages are sought, it is quite likely that some individual class members will want to sue on their own (provided that the potential damages per class member are substantial) rather than participate in a class-wide award, because they may have greater than average damages.'"). Courts routinely reject appeals by class members on grounds that a class settlement does not provide additional consideration for their individualized claims. *E.g.*, *Freeman*, 68 F. App'x at 743 (rejecting appeal on grounds that "many of the objections concerned individualized complaints or matters that were never raised in the lawsuit or approved for class certification."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 346-47 (N.D. Ga. 1993) ("The Chicago plaintiffs could have opted out of these settlements. Not having done so, it is not unfair to limit their recovery to the settlement proceeds.") (citing *Nat'l Super Spuds Inc. v. New York Mercantile Exch.*, 660 F.2d 9 (2d Cir. 1981)); *Sandoval v. M1 Auto Collisions Centers*, No. 13-CV-03230-EDL, 2017 WL 11679905, at *5 (N.D. Cal. Mar. 20, 2017) (Defendants "have a legitimate stake in assuring that the settlement releases

all claims arising from the same set of facts so that they are not subject to serial litigation, and absent class members can opt-out if they not wish to release those potential claims.").

The procedural history of the case reinforces this point. Appellants initially sought to "confirm" their opt-out status by referring to the filing of their individual lawsuit. (A. 069; R. 6841.) In this initial motion, Appellants argued they should be treated as opt-out Plaintiffs in order to maintain the right to pursue their individual bid-rigging claims. (A. 0070; R. 6841, at 2) (asserting Appellants are "opt-out plaintiffs entitled to assert all of their claims set forth in the Track Two Second Amended Consolidated Complaint.").) It was only after the district court rejected these constructive opt-out arguments that Appellants changed their tune and demanded "separate consideration" for their bid-rigging claims as members of the DPP Class. The prejudice Appellants complain about does not arise from any defect in the Simmons settlement, but from their own action (or inaction) in not opting out of the Simmons settlement.

**(b)** **The District Court Appropriately Evaluated the Value and Benefits Provided by the Simmons Settlement to the DPP Class Members**

Appellants also contend that the district court abused its discretion because it did not conduct an independent qualitative analysis of Appellants' individual bid-rigging claims in granting final approval to the Simmons settlement. (Brief, at 54.)

But this Court's precedents make clear that when analyzing whether a proposed settlement is fair, reasonable, and adequate, district courts should "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *E.E.O.C.*, 768 F.2d at 889. "[E]valuation of potential outcomes need not always be quantified, particularly where there are other reliable indications that the settlement reasonably reflects the relative merits of the case." *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir. 2017) (citing *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (holding the court's fairness inquiry does not require a quantitative value assessment where the settlement demonstrates the hallmarks of procedural fairness, and satisfies the other relevant factors supporting approval of the settlement); *Martin v. Reid*, 818 F.3d 302, 307 (7th Cir. 2016) (denying objectors' appeal which argued that the district court lacked sufficient information regarding the value of class members' claims based on the existence and value of serious injuries amongst the class members even though "[i]t is true that very little was said about them, and that more information might have been helpful.").

Furthermore, the district court's inquiry into the settlement must be focused on the value of the settlement as a whole, rather than its individual component parts. *Hisps. United of DuPage Cnty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) (in evaluating whether to give final approval to a proposed class-

action settlement, the court essentially "must determine whether the compromise, taken as a whole, is fair, reasonable and adequate.") (citing *Isby*, 75 F.3d at 1196); *Patterson*, 528 F.2d at 114 ("'The Court will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").

As detailed above (*see* Section VI.B.1.), the district court complied with these criteria, by performing a careful and thorough evaluation of the Simmons settlement as a whole and determining that it satisfied the fairness, reasonableness, and adequacy inquiry supporting final approval. *See Martin*, 818 F.3d at 307 ("[I]t is generally for the parties to decide how much litigation risk they wish to take, and courts should be hesitant to second-guess them."); *E.E.O.C.*, 768 F.2d at 889 (stating that "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial"). This included the value obtained the release of any related Broiler bid-rigging claims, which were necessary to ensure that Class members, such as the Appellants, would not continue to pursue such claims against Simmons once the settlement was approved. (A. 0002-0003, R. 7083, at 2-3); *see also In re Chicken*

*Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) ("Appellants fail to recognize that the starting point for the settlement negotiations was defendants' insistence upon 'total peace.' Defendants' insistence upon obtaining a complete release from all significant potential plaintiffs necessarily meant that no settlement would have been reached unless [plaintiffs] released their claims against defendants.").

Appellants claim that the Simmons settlement should be rejected in its entirety, solely based on the value of their bid-rigging claims. However, they have failed to support their objection with any evidence establishing the value of their bid-rigging claims or what the reasonable value of the Simmons settlement should have been to account for them. As this Court recognized in *Kaufman*, "the burden on the proponents to support the settlement should not extend to an affirmative duty to rebut every allegation an objector makes." 877 F.3d at 287. Accordingly, *Kaufman* denied an appeal by objectors based on their application to unrelated claims that were not supported by evidence. *Id.*; *see also In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d at 237 ("Objectors have failed to present any specific evidence that their interests were unfairly compromised apart from their general complaint that their share of the rewards was unsatisfactory."). The same is true here.

In a belated effort to establish the value of their bid-rigging claims, Appellants rely upon the allegations in their Track 2 complaint and summaries relating to

criminal prosecutions arising from bid-rigging. These novel arguments are waived to the extent they were not presented to the district court. *Williams v. Dieball*, 724 F.3d 957, 961 (7th Cir. 2013) ("a party may not raise an issue for the first time on appeal. Consequently, a party who fails to adequately present an issue to the district court has waived the issue for purposes of appeal.") Even if considered, as discussed in Section IV of the Simmons Response Brief (ECF No. 45), these allegations do not establish the value of the bid-rigging claims against Simmons. Notably, Simmons was not fined or charged criminally, nor were any Simmons employees prosecuted in the criminal bid-rigging case. The criminal case also did not result in any convictions.

Nor can Appellants establish that the bid-rigging claims have value to the DPP Class as a whole. As Appellants have represented, their allegations of bid-rigging are "targeted and specific." (*See* A. 2339; R. 7040, at 3.) The customers who were the alleged targets of bid-rigging opted-out (or in Appellants' case attempted to opt out) of the DPP Class, in order to pursue their own lawsuit focused on these individualized claims. The only ones who did not opt out are the Appellants.

This is confirmed by the reaction of the DPP Class to the Simmons settlement, including the release, which was disclosed to the DPP Class members and provided them the opportunity to object. If the Simmons settlement undersold the DPP Class, or released valuable claims on the cheap, the reaction of the DPP Class would been

negative. That no DPP Class member other than Appellants—who made an untimely attempt to opt out—objected is a telling sign that the Simmons settlement had significant value to the DPP Class, and the Class members were satisfied with it. (*See* A. 0009; R. 7083, at 9.)

Appellants have failed to meet the heavy burden of demonstrating the district court abused its discretion in approving the Simmons settlement and denying Appellants' objection based on the value of their individualized bid-rigging claims.

## C. The Release of Claims that Were or Could have Been Alleged in the Action Complies with Controlling Precedent

Appellants' Brief repeatedly blurs the line between the standards for class certification and the permitted scope of releases in class action lawsuits. According to Appellants, the scope of the release in a class action settlement must be identical to the certified claims. Based on this flawed premise, Appellants argue that the DPP Class's settlement of uncertified bid-rigging claims violates case laws relating to the scope of class certifications. Appellants' interpretation of the law is wrong. This Section addresses how the Simmons release falls squarely within the permissible scope of releases in class action settlements. Section VI.D below addresses Appellants' procedurally defective and flawed attacks on class certification.

1.  **Appellants' Claim that a Class Action Settlement Cannot Release Uncertified Claims is Contradicted by Controlling Precedent**

Appellants' argument that the release in the Simmons settlement cannot apply to "uncertified bid-rigging claims" (Brief, at 57) is based on the false premise that the scope of a class action release must be limited to the claims that were the direct focus of class certification. Appellants' position has been rejected by this Circuit and others, all of which have recognized it is permissible and customary for class action settlements to release claims that were or could have been alleged in the litigation. *See, e.g.*, *Oswald v. McGarr*, 620 F.2d 1190, 1198 (7th Cir. 1980) ("A settlement offer is a compromise and may include release of claims not before the Court"); *Richards Lumber and Supply Co. v. United States Gypsum*, 545 F.2d 18, 20-21 (7th Cir. 1976) (rejecting the contention that class settlement release cannot constitutionally release claims beyond those that would be barred by res judicata, and recognizing that "[a] general release, or a broad covenant not to sue, is not ordinarily contrary to public policy simply because it involves antitrust claims."); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981)) ("[A] court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint.") (citing *Patterson*, 528 F.2d 108, 110 n.2); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005) ("Plaintiffs in a class action may release claims that were or could have

been pled in exchange for settlement relief."); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 765 (10th Cir. 2020) ("[A] court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint."); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011) ("Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions, particularly when a defendant's ability to limit his future liability is an important factor in his willingness to settle.").

Appellants attempt to sidestep this authority by asserting the Simmons release violates the factual predicate doctrine to the extent that it applies to Appellants' bid-rigging claims. However, the Simmons release contains no reference to bid-rigging claims. Rather it directly comports with this precedent by releasing "the claims that have been asserted, or could have been asserted, in the Action" against Simmons, including all antitrust claims arising out of or relating to the direct purchase of Broilers. (*See* A. 1859; R. 6597-1.) Accordingly, the application of the release to Appellants' individual bid-rigging claims is not based on overbreadth of the release, but rather the close relationship between Appellants' bid-rigging claims and the other antitrust claims at issue. (*See* A. 0004; R. 7083, at 4.) This is no basis to find

that the release is overbroad. *McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022) (Approving the release where "nothing on the face of the release purports to apply to cases with a different factual predicate. Rather, the release is tied to cases arising out of a set action and time frame. Our inquiry ends there.").

2. **Appellants' Arguments Regarding the "Factual Predicate" of Their Bid-rigging Claims do Not Undermine the Appropriateness of the Release and Misrepresent the Nature of Appellants' Claims**

Appellants' argument that their related bid-rigging claims arise from the distinct factual predicate also lacks merit because it "takes an overly narrow view of the factual predicate" doctrine. *Elna Sefcovic, LLC*, 807 F. App'x at 766 (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d at 248). As numerous cases have recognized, the relevant inquiry into the permissible scope of the release does not focus on specific factual allegations, but rather the nature of the claims and transactions at issue that could have been alleged in the action. *See, e.g.*, *Oswald*, 620 F.2d at 1198; *Richards Lumber and Supply Co.*, 545 F.2d at 20-21; *Elna Sefcovic, LLC*, 807 F. App'x at 764 (finding a class action release appropriately barred claims arising from the various methods of miscalculating royalties regarding natural gas leases, rather than those specifically alleged in the class action complaint.); *McAdams*, 26 F.4th at 160 (holding that "a broad release. That encompasses a large swath of claims that might have been brought" complies with the factual predicate doctrine."); *Wal-Mart Stores, Inc.*, 396 F.3d at 96 (holding that

a settlement in an antitrust class action challenging the defendants' tying practices between credit and debit cards could release claims in separate antitrust cases alleging different theories of antitrust liability arising from group boycott and the treatment of banks.); *Smith v. Sprint Commc'ns Co. L.P.*, No. 99 C 3844, 2003 WL 103010, at *1 (N.D. Ill. Jan. 10, 2003) ("Intervenors claim that class settlements can never provide relief outside the pleadings. We reject this notion because a class settlement can provide for the broad release of claims, including claims not stated in the complaint.") (citing *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 375 (1996)).

The cases cited by Appellants do not hold otherwise. Most of these cases stand for the unremarkable proposition that the scope of class action settlement does not apply to unrelated claims brought in a separate lawsuit. *See, e.g.*, *Arandell Corp. v. Xcel Energy, Inc.*, No. 07-cv-076, 2022 WL 2314717 at *4-5 (W.D. Wis. Dec 27, 2022) (holding that a release in a class action alleging violations of the Commodity Futures Exchange Act arising from natural gas futures contracts, did bar distinct class claims brought in a separate action alleging violations of the Kansas Restraint of Trade Act arising from direct retail gas purchases); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 725 F. App'x 560, 561 (9th Cir. 2018) (same exact ruling and facts as *Arendall Corp.*); *Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg. Sales Practices and Prods. Liab. Litig.*, 91 F.4th 174, 177 (4th Cir.

2024) ("*Lumber Liquidators*") (holding the release in a consumer protection class action did not bar a wrongful death action). Another, *Burgess v. Citigroup Inc.*, directly undermines Appellants arguments because it held that plaintiffs' Financial Industry Regulatory Authority ("FINRA") claims were barred by that class release in a securities class action because: (1) appellants failed to exclude themselves from the settlement, (2) the FINRA claims alleged similar injury arising the overvaluation of Citibank stock. 624 F. App'x 6, 8 (2d Cir. 2015).

In this case, as detailed in Section III.C. above, Appellants' bid-rigging claims are pending in the same Action, involve the "same transaction or occurrence" (S.A. 138; R. 3654, at 2.), allege violation of same law, and arise from the same injury: "a price-fixing conspiracy by Defendants involving Broilers that incorporates the supply restriction and Georgia Dock facts asserted by all of the Classes and DAPs." (S.A. 176; R. 3732, at 10.) The district court has also recognized the relationship between the bid-rigging allegations and the rest of the case by, *inter alia*: (1) relating and consolidated Appellants' claims to the rest of the case;[9] (2) denying Defendants' motions to strike or sever the bid-rigging allegations;[10] (3) ruling that the bid-rigging

---

[9] (S.A. 141; R. 3663.)

[10] (A. 0688; R. 3835 ("There is a substantial relationship between the alleged bid-rigging claim and the alleged supply reduction and Georgia Dock price index manipulation claims. All three claims have the same goal of maintaining a high price for Broilers, involving the same industry and defendants.").)

claims could not be bifurcated from the other Broiler antitrust claims;[11] and (4) permitting Plaintiffs, including Appellants, to assert their bid-rigging, supply restriction, and Georgia Dock price fixing claims in a single complaint.[12] As the district court found, "At bottom, the DAPs cannot avoid the fact that they themselves brought bid rigging claims and supply reduction claims in the same complaint, and that they continue to argue that the two claims, along with the Georgia Dock claims, are part of a three-legged 'overarching' conspiracy. Thus, the claims are related, and the release is not overbroad." (A. 0005; R. 7083, at 5.)

3. **Appellants' Argument Regarding the Viability of Bid-Rigging Claims does Not Support Reversing Approval of the Simmons Settlement**

Appellants' argument that the Simmons final approval order should be reversed because the district court erred in finding that bid-rigging allegations were available to the DPP Class fails because the district court's analysis is correct. The DPP Class Track 1 election did not amount to a dismissal of claims, but rather was a stipulated case management decision in response to the district court's track-election order. (A. 0002; R. 7083, at 2.) As the district court noted, "no judgment had been entered on those claims. The Class could always have attempted to reassert them." (A. 0008; R. 7083, at 8.)

---

[11] (A. 1164; R. 5128, at 4 ("the Court finds that its decision to bifurcate this case was premature and must be vacated.").)
[12] (*Id.*)

Since the DPP Class's Track 1 election was in response to the district court's case management order, it did not constitute an abandonment of the bid-rigging claims. (*See* Brief, at 39-40.) Moreover, none of the cases Appellants cite relating to abandonment stand for the proposition that dismissed or unavailable claims cannot be released as part of the settlements. To the contrary, broad releases encompassing claims that were or could have been alleged are a well-recognized and established practice that is essential to promoting settlement. (*See* Section VI.C above.) This analysis does not turn on the viability of the released claims but their relationship to the claims in the Action. As set forth in Sections III.C.1 and III.C.2 above, that relationship exists here because Appellants' claims not only could have been, but actually were, alleged and pending in the same action.

The circumstances presented here are therefore quite different than *Lumber Liquidators*, which the Appellants incorrectly present as being "on all fours." (Brief, at 40-41). Notably, *Lumber Liquidators* is not an opinion about approval of a class settlement. Rather, it deals with assessing the preclusive effect of a consumer class action settlement on a subsequently-filed wrongful death case. *See* 91 F.4th at 177-78. The Fourth Circuit held that despite its broad release, the earlier class settlement—which involved "allegations focused on the quality of the subject flooring and on LL Flooring's deception in its sales and marketing"—did not bar plaintiff's subsequent lawsuit arising from "claims premised on bodily injury or

wrongful death." *Id.*, at 184. This is materially different from the case now before this Court, where all the claims are about antitrust violations arising from the very same Broiler transactions. While the precise preclusive effect of this settlement is not now before the Court, nothing in *Lumber Liquidators* supports the notion that the district court here abused its discretion in approving a settlement that seeks no more than to resolve all *antitrust* claims involving the sale of exactly the same goods.

Appellants complain that this result prejudices their individual bid-rigging claims. But they could have avoided this predicament by opting out of the Class, like everyone else in their position. By staying in the Class, Appellants lost the right to pursue their individual antitrust claims against the Defendants and were bound by the case management decisions of the DPP Class, including the decision to proceed on Track 1. Appellants are seeking to obtain the benefits of the Track 1 Class settlement (limited discovery, swift resolution), while preserving their Track 2 bid-rigging claims. The prejudice of which they complain does not arise from any fatal defect to the settlement, but is a result of their own action (or inaction) which resulted in their staying in the Class. It is not a basis to overturn the Simmons settlement and deprive the DPP Class members of the significant benefits it provides them and Appellants as well.

**D.** **Appellants' Attempts to Challenge the Class Certification are Procedurally Defective and Unconvincing**

Appellants level various challenges to the certification of the DPP Class and assert that the Court failed to make necessary class certification findings required by Rule 23. These arguments fail for two reasons. First, they ignore the fact that the district court certified the DPP Class in May 2022, and that order cannot be challenged by Appellants in this limited appeal. Second, they confuse the standards of class certification with the permissible scope of class action settlement and releases.

**1.** **Appellants Cannot Establish Jurisdiction or Standing as an Aggrieved Party Necessary to Challenge the Court's Class Certification Order**

The Simmons settlement was not settled on behalf of a settlement class that was certified for limited purposes. Rather, it was settled on behalf of members of the litigated DPP Class, which the trial court certified after extensive briefing and a full-day hearing including testimony from experts. *See Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *1. Appellants' claim that the district court did not perform an adequate class certification analysis (*see, e.g.*, Brief, at 47), completely ignores

this class certification order, which analyzed all the relevant factors under Rule 23(a) and (b)(3).[13]

As set forth above, this appeal is one of limited jurisdiction arising from the order and judgment approving the Simmons settlement. (*See* Section II above.) The certification of the DPP Class, which occurred on May 27, 2022, does not fall within the scope of this limited appeal. A petition by Defendants for interlocutory review under Rule 23(f) also was rejected by this Court. *Sanderson Farms Inc. v. Amory Invs. LLC*, No. 22-8007, Dkt. 25 (7th Cir. Jul. 18, 2022). Therefore, Appellants cannot establish any jurisdictional basis to challenge the class certification order as part of this appeal.

Nor can Appellants establish that they have been aggrieved by the district court's order granting class certification, which provides a benefit to the members of the DPP Class. *Senegal v. JPMorgan Chase Bank, N.A.*, 939 F.3d 878, 881 (7th Cir. 2019) ("Take the argument that the district court did not make the findings required by *Amchem*. Could a remand with instructions to make those findings assist our eight appellants? They don't explain how. If the judge makes the findings, they will be in the same position as they are now. If the judge concludes that the required

---

[13] This case therefore poses none of the issues or concerns relating to the certification of a settlement only class that was addressed by *Amchem Prod., Inc. v. Windsor*, which attempt to cobble together a sprawling settlement only class to resolve a mass tort action. 521 U.S. 591, 592-93, 621-22 (1997).

findings cannot be made, then they will be worse off, because they will lose the benefit of the [settlement]."").

### 2. Appellants Fail to Establish any Issues that Merit Overturning the Court's Class Certification Order

Even if they were ripe for appellate review, Appellants' challenges to class certification should be rejected because they lack merit. Appellants spend many pages on a meandering discussion regarding the application of Rule 23 to their individual bid-rigging claims. (Brief, at 58-66.) But the central premise of this argument—that "the bid-rigging claim was required to pass Rule 23 and *Comcast* scrutiny before it could be settled"—is fundamentally flawed and has been universally rejected. To the contrary, "[a] settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); *see also* Section V.C.1 above (citing to numerous cases which have recognized that class action settlements can, and almost always do, release related claims that were not certified or even alleged by the Class).

Appellants' claim that the settlement gives rise to impermissible conflicts of interest that violate Rule 23(a)(4) is similarly misguided. Contrary to Appellants' assertion (Brief, at 47); the district court performed a Rule 23(a)(4) analysis and found it was satisfied because: "(1) class counsel were experienced competent and counsel who would adequately represent the class, and (2) the class representatives

are direct purchases who assert claims arising from a conspiracy to raise chicken prices and have 'strong interest in establishing Defendants' liability and maximizing class-wide damages." *In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *3.

The appeal offers no basis to disturb the district court's Rule 23(a)(4) ruling. Appellants' accusation of impermissible conflicts of interest is based on the flawed premise that class counsel had a duty to maximize the value of Appellants' individual claims rather than act "for the benefit of the Class as a whole." (Brief, at 50.) This argument is directly at odds with core class action principles, which hold that class counsel has a "duty to the class as a whole [which] frequently diverges from the opinion of either the named plaintiff or other objectors." *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983); *see also Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981) (holding the "'client' in a class action consists of numerous unnamed class members as well as the class representatives" which can force class counsel to act in what she or he perceives to be in the best interests of the class as a whole); *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) ("The compelling obligation of class counsel in class action litigation is to the group which makes up the class. Counsel must be aware of and motivated by that which is in the maximum best interests of the class considered as a unit.").

As the district court and Appellants themselves recognized, class counsel and the class representatives complied with their fiduciary duties by securing a settlement that maximizes the benefits to the class as a whole. By maximizing the settlement amount, class counsel and the class representatives have secured a benefit to all the Class members, including Appellants, who will be entitled to receive their *pro rata* portion of the settlement proceeds based on the value of their eligible purchases. Therefore, there is no actual or apparent conflict of interest. *See Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012) (Conflicts of interest are "distinct from differences in entitlements"); *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013) (rejecting the argument that "the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely."); *Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165, 173 (2d Cir. 2006) ("[N]ot every variation between the interests of an absent class member and those of the class generally will render the class representatives inadequate.").[14]

---

[14] This case is therefore distinguishable from the cases that Appellants rely upon in support of their conflict of interest accusations. *See Mirfasihi*, 356 F.3d at 85 (finding a deficiency in a settlement where members of a distinct subclass would not be able to receive any portion or participate in the settlement proceeds); *Remijas v. Neiman Marcus Grp., LLC*, 341 F. Supp. 3d 823, 828 (N.D. Ill. 2018) (refusing to approve a settlement in which members of a subclass had "no chance of monetary recovery."); *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284-86 (7th Cir. 2002) (finding a number of issues with the approval of a proposed settlement including a "suspicious

## E. Appellants' Challenge to the Class Notice does Not Support Overturning the Simmons Settlement

Appellants' last argument, that the Class Notice did not comply with Rule 23 because it did not specifically refer to bid-rigging, fails for two reasons. First, as active participants in the case Appellants were admittedly aware of the DPP Class's Track 1 election and its implications, and were therefore not aggrieved or prejudice by any potential defect in the notice. Second, the DPP Class notice complied with the requirements of Rule 23, including clear instructions regarding the scope of the lawsuit and the importance of opting out to preserve related Broiler antitrust claims.

### (a) Appellants Were Not Prejudiced or Aggrieved by any Claimed Deficiency or Lack of Disclosure in the Notice

As this Court held in *Senegal*, appellants must establish they were "aggrieved by the decisions of which they complain" in order to establish a basis to overturn the district court's decision. 939 F.3d at 881. *Senegal* rejected objections to a settlement based on claimed deficiencies in the class notice because appellants "did not lose anything when the district judge implemented the statements in the notice," and therefore they were not aggrieved by the decision. *Id.*

---

circumstances" circumstances surrounding the settlement, and the fact that, "[t]wo classes were absorbed into the settlement even though their claims were sharply different from those of the classes represented by the settlement counsel."); *Amchem*, 521 U.S. at 626 (citing potential conflicts between class members who were currently injured from asbestos exposure, whose goal was to recover "generous immediate payments" and those who had potential injuries whose goal was to obtain "an ample, inflation-protected fund for the future.").

The same is true in this case. As the district court recognized, Appellants "unquestionably" were aware of these facts because they received *actual* notice of all filings in the case. (A. 0001; R. 7083.) Appellants have also confirmed they were fully aware of the two-track structure of the case and the action taken by the DPP Class with respect thereto. (*See, e.g.*, Brief, at 70.) The simple truth is that Appellants already had full knowledge of the facts they claim are missing from the notice, and therefore they cannot be presumed to have acted any differently if they were disclosed in the notice. Therefore, they have not been aggrieved by any claimed deficiency in the notice, and their appeal based on the notice should be denied on this ground. *Senegal*, 939 F.3d at 881.

### (b)    The Court-Approved Class Notice Complied with Rule 23

Appellants' notice argument also fails because the court-approved Class Notice contained all information required by Rule 23. The class notice does not need to be the sole or complete source of information regarding all potential facts and consequences. *Air Lines Stewards & Stewardesses Ass'n Loc. 550 v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) ("[T]he notice sufficiently conveyed the required information … thus satisfying the demands of due process."); *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (the class notice satisfies Rule 23 and due process when it apprises class members of the "nature of the claims at issue" and waiver of individual claims by class members who fail to opt out); *Elna Sefcovic,*

*LLC*, 807 F. App'x at 764 (rejecting objector's argument that the notice was deficient by not detailing all potential affected claims, because no such level of specificity is required by Rule 23).

Here, the Class Notice complied with the requirements of Rule 23 by disclosing: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; the procedures for opting out; and the binding effect of a class judgment on members who do not opt out. (*See* A. 1818; R. 6195 (Class Notice).) More specifically, the Class Notice properly advised DPP Class members that they would waive their individual Broiler antitrust claims against Defendants if they failed to opt out. (*See* Section III.D.I above.) There is nothing in the Class Notice which would leave reasonable class members in doubt that they needed to opt out to preserve their individual Broiler antitrust claims, including bid-rigging. *See United States v. Fenzl*, 670 F.3d 778, 780 (7th Cir. 2012) (bid-rigging is "a form of price fixing in which bidders agree to eliminate competition among them, as by taking turns being the low bidder.").

The reaction of the DPP Class confirms that there was no confusion regarding the opt-out process. Indeed, every single one of the hundreds of Track 2 plaintiffs *except the Appellants* recognized the importance of following this well-known opt-out procedure to preserve their individual bid-rigging claims. *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1996 WL 167347, at *4 (N.D. Ill.

Apr. 4, 1996) (recognizing the fact that numerous putative class members successfully exercised their opt-out right as evidence of the sufficiency of the class notice) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 813 (1985)). Amending the Class Notice to add references to bid-rigging as Appellants suggest would increase the likelihood of class member confusion and contravene the directive of Rule 23(c)(2)(B) that the notice be provided: "clearly and concisely [ ] in plain, easily understood language."

Finally, Appellants argue that the Class Notice was defective because it did not disclose the scope of the Simmons release. (Brief, at 69.) But this was impossible since the Class Notice was distributed before the Simmons settlement, and *there was no settlement release to disclose* at the time. The Class Notice duly informed Class members that they would be bound by any settlement or judgment in the case if they did not opt out. Once the DPP Class reached an agreement with Simmons, the Class was duly notified under Rule 23 of the scope and terms of the proposed settlement including the release. (*See* S.A. 213-220; R. 6830, at 7-14 (Ex. A (Court Approved Notice of Simmons Settlement).) Appellants filed their objection and appeal in response to this subsequent notice of the Simmons settlement. Nothing further is required.

# VII. CONCLUSION

For the reasons detailed herein, the district court acted well within its substantial discretion in approving the multi-million dollar Simmons settlement. Appellants have failed to establish any basis for this Court to overturn the district court's decision. This Court should affirm the district court's final approval order and allow members of the DPP Class to receive the benefits of the Simmons settlement.

DATED: March 25, 2024

**PEARSON WARSHAW, LLP**
CLIFFORD H. PEARSON
DANIEL L. WARSHAW
BOBBY POUYA
MICHAEL H. PEARSON

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
W. JOSEPH BRUCKNER
BRIAN D. CLARK

By: _____*/s/ Bobby Pouya*_____
        BOBBY POUYA

*Counsel for Direct Purchaser Plaintiffs - Appellees*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c), I certify that the attached brief is proportionally spaced, has a typeface of 14 point and contains 12,921 words.

*/s/ Bobby Pouya*

## CERTIFICATE OF SERVICE

I certify that on March 25, 2024, I caused this RESPONSE BRIEF OF DIRECT PURCHASER PLAINTIFFS-APPELLEES to be electronically filed with the Court using the appellate CM/ECF system. Counsel who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Bobby Pouya*
_____
