No. 24-01030

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

BOSTON MARKET CORPORATION, et al.,

Plaintiffs-Appellants

v.

MOUNTAIRE FARMS, INCORPORATED, et al.,

Defendants-Appellees

On Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:16-cv-08637
The Honorable Thomas M. Durkin

**APPELLANTS' SUPPLEMENTAL BRIEF
ADDRESSING ORDER GIVING RISE TO RELATED APPEAL**

Lori P. Lustrin
Robert W. Turken
Scott N. Wagner
**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**
1450 Brickell Ave., Suite 2300
Miami, Florida 33131-3456
Telephone: 305-374-7580
Facsimile: 305-374-7593
llustrin@bilzin.com
rturken@bilzin.com
swagner@bilzin.com

*Counsel for Appellants*

# TABLE OF CONTENTS

                                                       **Page(s)**

TABLE OF AUTHORITIES ................................................................................ ii

ARGUMENT ..........................................................................................................1

CONCLUSION ....................................................................................................10

CERTIFICATE OF COMPLIANCE WITH FRAP 32 AND ECF 83 ...............12

CERTIFICATE OF SERVICE ............................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES**

Federal Rule of Civil Procedure 23............................................................3, 8, 9

# ARGUMENT

The district court's order approving the Koch and House of Raeford settlements ("New Order")[1] confirms that the district court abused its discretion when it approved the Simmons settlement ("Simmons Order") that is the subject of this Appeal.

The Restaurants filed their objection to the Koch and House of Raeford settlements after briefing in this Appeal had been completed and raised with the district court the legal infirmities of the Simmons Order that the Restaurants presented to this Court. The district court did not address any of those issues in the New Order. Instead, the district court first rejected the Restaurants' Koch and House of Raeford Objection "for the same reasons" that the Court stated in the Simmons Order. New Order at 2. The district court then elaborated on its rationale in the Simmons Order to further explain its rulings. The district court's expanded logic demonstrates further why the Simmons Order (and the New Order) cannot stand.

---

[1] The New Order is the subject of appellate case number 24-02422 (No. 1:16-cv-08637, ECF 7352).

In the New Order, the district court stated that it did not have to consider the Class's bid-rigging claim in its Certification Order because "[o]nce the Class gave notice that they would proceed on Track one, ***the Class was no longer litigating bid-rigging***[.]" *Id.* at 3 (emphasis added). The district court's statement is exactly what the Restaurants emphasized both before the district court and this Court and directly contradicts the district court's resurrection theory that served as the foundation for the Simmons Order. As the district court stated then, "[b]ecause bid-rigging claims were potentially still available to the Class, the Class could settle those claims." Simmons Order at 2 (A.0002).

The Class either abandoned a bid-rigging claim or it did not. The claim did not sit in a "potential" or "pending" status. So, as the district court now recognized, when Class Counsel represented to the district court and all parties that the Class was "no longer litigating bid-rigging," bid-rigging ceased to exist as a class claim and reverted to the individual class members.

The district court's acknowledgement in the New Order that bid-rigging was not a claim that was certified by the district court also is critical

because it confirms that the Certification Order was not sufficient to allow for the settlement of a bid-rigging claim. As the 2018 Advisory Committee Notes to Rule 23 make clear, in addressing the subjects that must be included in a Rule 23(e)(1) notice "[o]ne key element is class certification. If the court has already certified a class, the only information ordinarily necessary is ***whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted***." (emphasis added). Here, of course, the district court never re-certified the Class or modified its Certification Order to include bid-rigging.

The district court's recognition in its New Order that bid-rigging was not a class claim also allowed the district court to reverse course on its ruling in the Simmons Order that the "potential reemergence [of a class bid-rigging claim] was necessarily a part of the value of the settlement[.]" Simmons Order at 8 (A.0008).

In its Simmons Order, the district court recognized that the relevant question is whether "the recovery amount fails to fairly compensate the Class for releasing their claims, including the bid-rigging claims." *Id.* at 7

3

(A.0007). The district court considered the issue and concluded that the value of the bid-rigging claim was appropriately taken into account by the Class at settlement:

> [T]he Class's concession that the bid-rigging claims were not a 'focus' of settlement negotiations does not mean the value of those claims was not considered, and certainly not that they were released for 'nothing.' All parties in this case were well aware of the bid-rigging claims and their potential merits and value.

*Id.* at 7-8 (A.0007-08). The district court continued that if the Restaurants believed that their bid-rigging claim was not properly valued, they were required to "argue what an appropriate recovery amount would have been" to account for that value. *Id.* at 7.[2]

In its Response Brief before this Court, the Class disregarded the district court's ruling and instead insisted that the value of the bid-rigging

---

[2] Notwithstanding the improper burden shifting implicit in the district court's holding, the Restaurants did just that. In connection with the Koch and House of Raeford Appeal, the Restaurants engaged an economist who submitted a declaration setting forth a preliminary assessment of the value of the Restaurants' bid-rigging claims for the district court's consideration.

4

claim was irrelevant. Class Counsel asserted that they did not have to consider the value of the bid-rigging claim because bid-rigging was "individual" and "targeted and specific" to the Restaurants, and their only obligation was to the Class as a whole. ECF 60 at 33.

In its briefing before the district court on the Restaurants' Objection to the Koch and House of Raeford settlements, Class Counsel doubled down on their "duty to the class as a whole" contention. In fact, the Class argued that the only proper objection is one that impacts all or a substantial portion of the class.

To reconcile the New Order with Class Counsel's position that they did not have to consider the value of the bid-rigging claim, the district court departed from its valuation discussion in the Simmons Order and relegated the valuation of the Restaurants' bid-rigging claim to a non-issue. The New Order states that the question of the "fair value" of the bid-rigging claim is a "red herring caused by the DAPs' failure to opt out." New Order at 2.

The New Order also adopts the Class's argument that the Restaurants have no right to object to the settlements because they did not opt out. But,

5

the district court's reasoning is even more extreme. The district court held that the "the settlements here do not directly address the value of [the bid-rigging] claims" because "*the DAPs* communicated to the Court and the parties in this case that they planned to proceed in Track Two" and "indicated" that they would "opt out of the certified class when the time came[.]" *Id.* at 3-4. (emphasis in original). The district court ruled that "[t]he DAPs cannot now criticize the settlements reached by Class Counsel because the DAPs failed to do what they promised they would." *Id.* at 4.

The district court's reference to the Restaurants' supposed "breach of a promise" highlights the confusion created by the district court's two track structure. The Restaurants followed the district court's instructions and gave notice of their election to pursue their Track Two bid-rigging claims. The Restaurants then, also at the district court's direction, filed their separate Complaint setting forth the bid-rigging claims that the Class jettisoned. Again, it was because of the district court's express demarcation between the two tracks that the Restaurants determined that it was improper to participate in the Track One exclusion process.

6

The district court also failed to explain how the Class could have relied to its detriment on the Restaurants' supposed "promise." The New Order says that the Class was entitled to assume that the Restaurants would be pursing their own bid-rigging claims and that the Class had "no choice but to proceed accordingly." *Id.* The New Order continues that "[t]he DAPs cannot now turnaround and blame Class Counsel for failing to pursue what the DAPs (incorrectly) assured the parties and the Court they would handle themselves." *Id.*

But if the Class relied on the fact that the Restaurants were prosecuting their own bid-rigging claims (which the Restaurants were), then how could the Class be harmed if the Restaurants' bid-rigging claims were excluded from the settlements? Under the district court's own logic, omitting the Restaurants' bid-rigging claims from the Class settlements would achieve exactly the result that all parties assumed would occur—that the Restaurants would continue to pursue the bid-rigging claims that the Class gave up.

Paradoxically, if anyone was harmed by a promise it was the Restaurants. Under the district court's reasoning, just as the Restaurants

7

"promised" to prosecute their bid-rigging claims under Track Two, the Class promised to give up its bid-rigging claim—as the district court required them to do—by electing Track One. Except in the case of the Class, the district court validated that promise by stating that the Class's Track One election was final and that the Class would not get another bite at the apple to try a bid-rigging claim.

The district court's rationale in the New Order that by failing to opt out the Restaurants forfeited their rights as class members to "criticize" the settlements writes Rule 23 out of existence and amounts to an impossible "Catch 22." On the one hand, the New Order states that because the Restaurants did not follow the district court's Track One opt out procedure, the Restaurants became members of the Class for purposes of the Simmons, Koch, and House of Raeford settlements. But then, the New Order holds that the Restaurants have no rights as class members to challenge the settlements that release their bid-rigging claims for nothing precisely because they *did not* opt out. Thus taken to its logical conclusion, the district court's ruling means that there can never be an objection to any settlement.

8

Equally important, the district court's determination that the Restaurants should be penalized for not opting out endorses Class Counsel's attempt to differentiate between what they characterize as "willing" class members and "unwilling" class members. And, according to the Class, the Restaurants as "unwilling" class members have less rights than any other class member and cannot even object to a settlement. This result too defies logic and finds no support in the law. The distinction violates this Court's precedent, *Amchem*, and Rule 23 that entitles the Restaurants to the same fiduciary protection as any other class member against conflict of interest, inequitable treatment of disparate claims, and basic unfairness.

The metamorphosis of the district court's holdings shine a light on the reality that sits at the core of this Appeal: the Restaurants' bid-rigging claims could never have been the subject of the Class case, and the attempt by the district court to sanction the Class settlements' release of the Restaurants' bid-rigging claims cannot be supported under any analysis.

## CONCLUSION

For these reasons as well, the Restaurants respectfully request that the district court's Simmons Order be reversed in all respects.

Dated: August 28, 2024

Respectfully submitted,

By: /s/ *Lori P. Lustrin*
Lori P. Lustrin
Robert W. Turken
Scott N. Wagner
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Ave.,
Suite 2300
Miami, Florida 33131-3456
Telephone: 305-374-7580
Facsimile: 305-374-7593
llustrin@bilzin.com
rturken@bilzin.com
swagner@bilzin.com

*Counsel for Boston Market Corporation, Bojangles' Restaurants, Inc. and Bojangles' Opco, LLC, Golden Corral Corp., El Pollo Loco, Inc., Zaxby's Franchising LLC, Domino's Pizza LLC and Domino's Pizza Distribution LLC, Cracker Barrel Old Country Store, Inc., CBOCS Distribution, Inc., Barbeque*

*Integrated, Inc. d/b/a Smokey Bones Bar & Fire Grill, Shamrock Foods Company, United Food Service, Inc., Sun Ice Cream Finance II, L.P. (f/k/a FIC Restaurants, Inc.), The Johnny Rockets Group, Inc., WZ Franchise Corp., Captain D's LLC, and White Castle Purchasing Co.*

## CERTIFICATE OF COMPLIANCE WITH FRAP 32 AND ECF 83

The undersigned, counsel of record for Appellants, furnishes the following in compliance with Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) and ECF 83.

I hereby certify that this brief conforms to FRAP 32(a)(5) and 32(a)(6) and ECF 83 for a brief produced with proportionally spaced font. The length of this brief is 1,804 words.

/s/ *Lori P. Lustrin*
Lori P. Lustrin

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing document was electronically served upon the parties and counsel of record on August 28, 2024.

/s/ *Lori P. Lustrin*
Lori P. Lustrin
